Milligan, J.,
delivered the opinion of the court :
This suit originally stood in tbe name of Lida Moore, an infant, by her guardian ad litem, Oliver H. Long, but subsequently, by leave of the court, the petition was amended, and the action now stands in the name of Oliver H. Long, guardian of the said Lida Moore, minor, &c.
The cause of action is to recover the net proceeds of fifty-nine bales of cotton, alleged to have been seized by 0. A. Montross, a Treasury agent, on the 29th of June, 1805, and thereafter sold, and the proceeds paid into the Treasury of the United States.
The facts on which the case .rests are found to be as follows :
Lida Moore is a minor; she was never married, and has neither father, mother, brother, or sister living. Her mother died about the year 1853; her only brother, aged eight years, in 1858, and her father, in May, 1861. She lived from childhood with her grandmother, up to 1866, in Columbus, Mississippi, and is shown to have derived a considerable estate in negroes., through her mother. William Moore, her father, died intestate, heavily involved in debt, and his brother, Joseph G-. Moore, administered on his estate.
At the death of the claimant’s father he was the owner in fee of a considerable landed estate in Mississippi, which descended to the said Lida, and the cotton involved in this case was raised in the years 1862-’63, on the lands so descended to. her, by the labor of her own servants.
The cotton was stored on the plantation, under shelter, and in 1865 seized as O. S. A. cotton, under the authority of 0. A., Montross, the United States Treasury agent at Jackson, Mississippi, and afterward fifty-seven bales instead of fifty-nine were shipped to him at that place, and there turned over to his care.
It further appears that, prior to the seizure of the cotton, Joseph G-. M%ore, the uncle of the claimant, and the administrator of her father’s estate, assumed to sell the cotton now in question to one Charles Baskcrville, a rebel purchasing agent for the Confederate States, and that the terms of the sale were agreed upon, but the cotton was never formally delivered to. the agent — he never paid anything for it — and afterward the,, trade was canceled by the parties.
*361 But there is no evidence even tending to prove that the uncle had any authority whatever to lhake such a sale, or that the claimant was in any way connected with it. At that time she was only about twelve years of age, and incapable of giving-consent to the transaction.
The claimant’s loyalty is but slightly proven. It could not perhaps have been otherwise, for at the breaking out of the war she was only about ten years oí" age, and could not have had at that time any established character or settled opinions in respect to it. It does, however, appear that she never gave any aid or comfort to the rebellion, which the court regard, under the circumstances of this case, sufficient.
The letters of guardianship to Long are regularly proved-; and on this state of facts there are no questions of serious difficulty arising on the record. The ownership of the cotton is nob questioned in argument by the Assistant Attorney-General; nor do we think it could successfully have been controverted, for the law cast the title to the land on which the cotton was produced on the claimant, and she cultivated it with the labor of her own servants. . The fruits were hers, notwithstanding the administrator, in default of personal assets, might, under a regular proceeding, convert the land itself into assets to pay the debts of the estate. But'this record discloses no such proceeding, and we are compelled to treat the title as resting in the heir, and deal with it accordingly.
The title to the cotton being fixed' in the claimant, the attempted prrvate sale' of it by Joseph G. Moore, the claimant’s uncle, to the Confederate States agent, amounts to nothing. He had no authority over claimant’s .property, and could not in any sense, either as administrator or guardian, under the laws of Mississippi, have lawfully transferred it at private sale to the rebel government. (Revised Code of Mississippi of 1857, section xi, p. 445, and section xviii, art. 151, p. 463.)
The objection that the proceeds of the cotton never reached the Treasury cannot be sustained. We have uniformly held, since I have been on the bench, that when the cotton was fairly traced to the hands of a Treasury agent, the law presumed the payment of the proceeds of the sale into the Treasury-. In this case, the evidence establishes to our satisfaction that the cotton reached the hands of C. A. Montross, the Treasury agent at Jackson, Mississippi, and there is nothing in the *362 record that leads us to doubt that he did not faithfully discharge his duty in respect to it.
The loyalty of the claimant, as we have ruled in the finding of facts, is sufficiently proven, and nothing remains but to ascertain the amount for which the judgment should be rendered.
The net proceeds of cotton collected by C. A. Montross and sold in New York appear to be $110.50 per bale, which gives the judgment for fifty-seven bales, $5,640.50, and it will be so entered.